WILLIAM C. N. SWIFT & another *vs.* JOHN W. HALL & another.

Bristol.   Oct 24. — Nov. 21, 1876.   DEVENS & LORD, JJ., absent.

In an action against the general owner of a vessel, for materials furnished and ser-vices rendered, at the request of the master, to the vessel in getting her off of a bar on which she was stranded, it appeared that, by an oral agreement between the defendant and master, the latter was to have the vessel for an indefinite period, was to victual and man her, pay the port charges, and use and employ her as he chose, paying the general owner one half the net earnings. The defendant testified that if the vessel needed anchors, or sails, or repairs on her hull, &c., the master would pay for them out of the owners' part of the earnings, and that, if that was not enough, he supposed the owner would have to make it up. *Held*, that the evidence was competent to prove the terms of the agreement of letting; and that the general owner was liable for the master's contracts for the materials and ser vices, so far as they were necessary to relieve the vessel from her peril.

CONTRACT, against John W. Hall and Joseph S. Hubbard, as owners of the schooner J. E. Comegys, on an account annexed, for materials and supplies furnished and services rendered to said schooner. Hubbard was defaulted. Trial in the Superior

Court, before *Wilkinson*, J., without a jury, who allowed a bill of exceptions, in substance as follows:

The defendant Hall owned fifteen sixteenths of the schooner and Hubbard the other sixteenth. In 1873, the schooner grounded upon a bar at Mosquito Inlet, Florida, and the materials and supplies were furnished and services rendered in getting her off therefrom. At this time, and for a year or two before, Hall's interest in the vessel had been and was let to Hubbard on shares. Hubbard was to have the vessel for an indefinite period; was to victual and man her, and pay the port charges, and use and employ her as he chose, and pay to Hall one half of the net earnings. Hubbard himself went in her as master. Hall, on cross-examination, testified that if the vessel needed anchors, or sails, or repairs on her hull, &c., the master would pay for them out of the owners' part of the earnings, and if that was not enough, he supposed the owners would have to make it up.

There was evidence tending to prove that Hubbard engaged of the plaintiffs all or certain of the items claimed, but without any authority from Hall, unless the same arose from the foregoing facts, except as to certain items amounting to $124.36, which were found by the judge upon the ground of direct authority, because Hall came down to Mosquito Inlet on January 1, 1874, and ordered the same, and they were furnished after his coming; all the other articles were furnished between December 1 and 31, on the call of Hubbard, and without any authority from Hall. The judge disallowed sundry items, as relating to victualling and manning the vessel, and allowed $124.36, for the reason of special authority as above set forth, and also allowed $235.12 more, as chargeable to the general owner under the facts set forth. There was evidence tending to show that all the materials and service furnished by the plaintiffs were necessary for the vessel in her then condition.

The defendant Hall asked the judge to rule that on the aforesaid facts no liability existed against him in respect of the items furnished without special authority; but the judge declined so to do, and held that Hubbard had by reason of these facts the power to bind Hall for all items that related to the relief of the vessel from her peril.

The defendant Hall also asked the judge to rule that said Hubbard was owner *pro hac vice*, and not the agent of Hall. But the judge declined so to do, and ruled as matter of law on these facts that Hubbard was authorized by the circumstances of necessity to procure all necessary aid or supplies to the relief of the vessel.

Judgment was ordered for the plaintiffs for $359.48, and interest from the date of the writ; and the defendant Hall alleged exceptions.

*T. M. Stetson*, for the defendant Hall.

*G. Marston*, for the plaintiffs.

GRAY, C. J. The only difficulty in this case arises from the way in which the bill of exceptions states the terms of the agreement between Hubbard, the master and the owner of one sixteenth of the vessel, and Hall, the other part-owner. It clearly appears that Hubbard was to have the vessel for an indefinite period and to employ her as he chose, and was to victual and man her and to pay the port charges, and that the net earnings were to be equally divided between himself and Hall. The charter being oral, Hall's testimony was competent to prove its terms, and to show that necessary repairs of the vessel, either in hull, anchors or sails, were to be paid for " out of the owners' part of the earnings; " and the bill of exceptions, by the manner in which it states the testimony, and afterwards refers to " the aforesaid facts," shows that this fact was assumed by the judge to be proved as testified to by Hall.

The necessary conclusion of law is, that, while the owners would not be responsible upon the master's contracts with shippers of goods, nor for provisions or supplies required to enable the vessel to prosecute her voyage, they were liable for necessary repairs upon the vessel herself. *Reynolds* v. *Toppan*, 15 Mass. 370. *Urann* v. *Fletcher*, 1 Gray, 125. *Baker* v. *Huckins*, 5 Gray, 596. The ruling of the court, which allowed the plaintiffs to recover, without proof of special authority, only for the materials and services which were necessary to relieve the vessel from her peril, was therefore correct.    *Exceptions overruled.*